[S. F. No. 15655. In Bank.—June 21, 1937.]

ANGELINA SANGUINETTI, Plaintiff and Appellant, v. JOE SANGUINETTI, Defendant and Appellant.

W. A. Lahanier for Defendant and Appellant.

John V. Filippini and A. Walter Allen for Plaintiff and Appellant.

SEAWELL, J.—Plaintiff Angelina Sanguinetti and defendant Joe Sanguinetti were married on February 2, 1927, and separated on September 24, 1934. On October 8, 1934, plaintiff filed her complaint herein, setting forth two causes of action, the first for divorce on the ground of extreme cruelty, and the second for annulment based on the fact that at the time of her marriage to Sanguinetti she had a former husband living. Sanguinetti filed an answer and also a cross-complaint wherein he prayed for a divorce from plaintiff on the ground of her extreme cruelty and for an annulment. The court granted the defendant an annulment on his cross-complaint. It appears from the findings that plaintiff had married Antonio Depaoli on June 30, 1914, and on July 23, 1923, had procured

an interlocutory decree of divorce from him. But at the time of her marriage to defendant herein, more than three years later, a final decree of divorce had not been entered and was not thereafter entered until January 12, 1934. The court herein found that both parties believed the second marriage legal, and that defendant did not know it was illegal until the filing of the complaint herein.

In addition to decreeing the illegality of the marriage, the court found that a certain parcel of real property in San Francisco of the reasonable value of $4,000, and the furnishings in the house on said property, were the separate property of defendant; that he had procured said San Francisco real property in an even exchange for real property in Sonoma County owned by him prior to his marriage, and that no money or property of plaintiff was used in the purchase of said real property or in the improvement thereof. Both plaintiff and defendant in 1932 had executed a note for $1200 in favor of the American Trust Company, secured by a deed of trust on said property.

Plaintiff has filed an appeal from that portion of the judgment decreeing that the above-described real property is the separate property of defendant.

The court further held that plaintiff was entitled to recover from defendant the sum of $1250 as the reasonable value of her services to defendant during the time they lived together, and that plaintiff was entitled to an equitable lien to secure payment of this sum on the defendant's San Francisco real property. Defendant appeals from this provision of the judgment. Both appeals are on the judgment-roll.

Plaintiff's appeal must be dismissed because not filed within sixty days from the entry of judgment on January 21, 1936. (Sec. 939, Code Civ. Proc.) The sixtieth day after the entry of judgment fell on Saturday, March 21, 1936. The notice of appeal was filed on Monday, March 23, 1936. Plaintiff contends that under section 3257 of the Political Code, the 29th day of February, 1936 (the year being leap year), and the day preceding it, that is, the 28th day of February, must be counted together as one day, with the result that the sixtieth day after judgment would be Sunday, March 22d, and filing on Monday, March 23d, would be in time. Said section of the Political Code applies to periods measured in years, half

years, or quarter years. (*People* v. *Hill,* 2 Cal. App. (2d) 141–147 [37 Pac. (2d) 849].). It does not apply where the period is measured in days. (*Helphenstine* v. *Vincennes Nat. Bank,* 65 Ind. 582 [32 Am. Rep. 86]; *Brown* v. *Jones,* 125 Ind. 375 [25 N. E. 452, 21 Am. St. Rep. 227]; 62 C. J. 1009.)

Furthermore, had plaintiff's appeal been taken in time it would be necessary to affirm the portion of the judgment from which she appeals, that is, the provision decreeing the San Francisco real property to be the separate property of the defendant. Since the appeal is taken on the judgment-roll it must be presumed that the evidence supports the finding as to the separate character of said property. (*Dalton* v. *Gore,* 88 Cal. App. 554 [263 Pac. 844]; *Delanoy* v. *Delanoy,* 216 Cal. 23, 27 [13 Pac. (2d) 513]; Id.; 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321]; *Ouzoonian* v. *Vaughn,* 194 Cal. 139, 145 [228 Pac. 8].) The pleadings do not reveal that said "property stood of record in the names and was the property of plaintiff and defendant as joint tenants". An appeal from that portion only of the judgment decreeing said real property to be the separate property of defendant free and clear of claims of plaintiff (except the lien given her by the judgment) would not bring before this court the propriety of the trial court's action in failing to give plaintiff judgment for $1477.15 which the court had found that she had "paid over" to defendant, and he had never repaid.

This brings us to defendant's appeal from that portion of the judgment which awarded plaintiff $1250 as the reasonable value of her services rendered to defendant while they lived together. By her complaint plaintiff prayed for monthly alimony and that the San Francisco real property be assigned to her. She did not ask judgment for the value of her services, but the complaint contained a prayer for general relief. Upon an annulment plaintiff would not be entitled to alimony. (*Millar* v. *Millar,* 175 Cal. 797, 810 [167 Pac. 394, Ann. Cas. 1918E, 184, L. R. A. 1918B, 415].) Since the appeal is on the judgment-roll alone it may be presumed in support of the judgment that plaintiff's right to recover for her services was made an issue in the trial by consent of the parties, and evidence introduced on said issue. (*Bonnelfillio* v. *Ricks,* 214 Cal. 287 [4 Pac. (2d) 929]; *McDougald* v. *Hulet,* 132 Cal. 154 [64 Pac. 278]; *Fighiera* v. *Radis,* 180

Cal. 660 [182 Pac. 418]; *Peck* v. *Noee,* 154 Cal. 351 [97 Pac. 865]; *Dalton* v. *Gore, supra;* 2 Cal. Jur. 239–242.)

■ In an action for divorce or for annulment in the event the marriage sought to be dissolved by divorce has not been validly contracted, it is sound practice to dispose of the property rights of the parties in the same action, thus avoiding multiplicity of suits. (*Figoni* v. *Figoni,* 211 Cal. 354 [295 Pac. 339]; *Schneider* v. *Schneider,* 183 Cal. 335 [191 Pac. 533, 11 A. L. R. 1386].)

■ Where a "putative" marriage has existed, that is, where one or both parties to an invalid marriage have in good faith believed such marriage to be valid, upon an annulment or declaration of invalidity the courts will recognize the right of the *de facto* wife in property acquired by the parties through their joint efforts, and which would have been community property had the marriage been valid, and will make an equitable division of such property. (*Figoni* v. *Figoni, supra; Schneider* v. *Schneider, supra; Coats* v. *Coats,* 160 Cal. 671 [118 Pac. 441, 36 L. R. A. (N. S.) 844]; *Macchi* v. *La Rocca,* 54 Cal. App. 98 [201 Pac. 143]; *Buckley* v. *Buckley,* 50 Wash. 213 [96 Pac. 1079, 126 Am. St. Rep. 900]; *Fuller* v. *Fuller,* 33 Kan. 582 [7 Pac. 741]; *Werner* v. *Werner,* 59 Kan. 399 [53 Pac. 127, 68 Am. St. Rep. 372, 41 L. R. A. 349]; *Krauter* v. *Krauter,* 79 Okl. 30 [190 Pac. 1088]; see, also, *Reese* v. *Reese,* 132 Kan. 438 [295 Pac. 690], note 75 A. L. R. 728.) In *Feig* v. *Bank of America etc. Assn.,* 5 Cal. (2d) 266, 273 [54 Pac. (2d) 3], it was stated that a putative husband was entitled to succeed to all property acquired prior to 1923 and which would have been community property had the marriage been valid. In *Temescal Rock Co.* v. *Industrial Acc. Com.,* 180 Cal. 637, 641 [182 Pac. 447, 13 A. L. R. 683], a putative wife was permitted to recover a death benefit based on total dependency under the Workmen's Compensation Act. In *Fort Worth & R. G. Ry. Co.* v. *Robertson,* 103 Tex. 504, 55 Tex. Civ. App. 309 [121 S. W. 202, 131 S. W. 400, Ann. Cas. 1913A, 231], a *de facto* wife upon the death of her supposed husband was permitted to bring an action for injuries sustained by him the recovery for which would have been community property had the marriage been valid and the recovery had during the husband's lifetime.

The above decisions illustrate a tendency to give the *de facto* spouse who has acted in good faith certain rights of a legal spouse. But this is not the theory of recovery in the instant case. Here no joint property was found to exist. The recovery allowed plaintiff is for the reasonable value of her services rendered to her supposed husband. A legal wife upon divorce has no right to recover for services rendered in the maintenance of the joint domicile, but may obtain alimony for her future support in proper cases. The putative wife, as noted above, has no right to an allowance of alimony.

Where an invalid marriage has been procured by fraud of the *de facto* husband, who is aware of the invalidity of the marriage, the right of the wife who has acted in good faith to recover the reasonable value of her services over and above the value of the support and maintenance furnished her by her supposed husband, has been sustained in a number of jurisdictions, including this state. (*Mixer* v. *Mixer*, 2 Cal. App. 227 [83 Pac. 273] ; *Marsh* v. *Marsh,* 79 Cal. App. 560, 565, 571 [250 Pac. 411] ; *Higgins* v. *Breen,* 9 Mo. 297; *Re Fox,* 178 Wis. 369 [190 N. W. 90, 31 A. L. R. 420], with note; *Sanders* v. *Ragan,* 172 N. C. 612 [90 S. E. 777, L. R. A. 1917B, 681] ; Keener on Quasi-Contracts, p. 321 et seq.)

The basis of recovery for services in the above cited cases is *quasi* contractual. The supposed husband has been unjustly enriched by the amount by which the reasonable value of the services rendered to him by his *de facto* wife exceed the amount devoted by him to her support and maintenance. These services would not have been rendered but for a belief in the validity of the marriage and the continuance of the incidents of status incident to a valid marriage. It is just and equitable that the *de facto* husband should make compensation for what has been rendered to him under a mistaken belief in the validity of the marriage which was induced by his own fraud. The law raises the promise to pay in such cases. Cases in other jurisdictions which deny recovery to the *de facto* wife do so on the ground that as the wife never contemplated she should be paid, a contract will not be implied. (*Cooper* v. *Cooper,* 147 Mass. 370 [17 N. E. 892, 9 Am. St. Rep. 721] ; *Cropsey* v. *Sweeney,* 27 Barb. (N. Y.) 310.)

In the instant case, however, the invalidity of the marriage was due to no fraud or fault of the defendant. He was free to marry. Both parties believed their marriage in 1927 valid. A final decree of divorce was entered in plaintiff's action against her first husband on January 12, 1934, at which time plaintiff and defendant were living together as husband and wife. After entry of the final decree in plaintiff's action against her first husband, plaintiff and defendant were free to legalize their relationship of seven years' standing by contracting a valid marriage. The termination of said relationship cannot, therefore, fairly be said to arise from the invalidity of their marriage, but was due, rather, to circumstances existing at the time of their separation.

In the instant case both plaintiff and defendant alleged grounds for divorce, in addition to the invalidity of their marriage in 1927. During the seven-year period they lived together plaintiff rendered services for defendant, which, in view of the court's finding, we must assume exceeded by $1250 the value of the maintenance and support supplied her by defendant. This is at the rate of approximately $13.50 a month for the period of seven years and almost eight months the relationship continued. To the extent that the value of plaintiff's services exceeded the value of the maintenance provided her, she has not received consideration therefor. She rendered these services in good faith under the belief that she was the wife of defendant, and in expectation of the continuing benefits of that status. If these continuing benefits were cut off not because of the original invalidity of the marriage, but because the *de facto* husband committed acts of cruelty which if the marriage had been valid would constitute cause for divorce, we are of the view that the putative wife was entitled to be paid in so far as her services exceeded in value the support provided by her supposed husband.

In the instant case the appeal is taken on the judgment-roll. The evidence is not before us. Although the court did not specifically find that defendant had committed acts which would have constituted cause for divorce if the marriage had been valid, and which justified plaintiff in separating from him, rather than going through a second legal ceremony and continuing their relationship, it did find that "the sum of $1,250 is a fair, equitable and reasonable sum to be paid by

the defendant to the plaintiff as and for the reasonable value of plaintiff's services to defendant during the time they lived together''. This finding supports the judgment. Since all intendments and presumptions are in favor of the judgment, rather than in derogation thereof, it must be presumed that the evidence supports the award of $1,250 to plaintiff, and that more specific and complete findings, if made, would have been favorable to her. (*Delanoy* v. *Delanoy,* 216 Cal. 23, 27 [13 Pac. (2d) 513] ; *Fairbanks* v. *Macready,* 92 Cal. App. 156 [267 Pac. 716, 268 Pac. 947] ; *Chaban* v. *Pittler,* 105 Cal. App. 205 [287 Pac. 151] ; *Bowers* v. *Union Trust Co.,* 117 Cal. App. 259 [3 Pac. (2d) 614] ; *Ouzoonian* v. *Vaughn,* 194 Cal. 139 [228 Pac. 8] ; 2 Cal. Jur. 525; 24 Cal. Jur. 947.)

█ It cannot be held that the court was without right to decree a lien for the amount of $1250 awarded plaintiff on the San Francisco real property of defendant. Under section 140 of the Civil Code, the award of alimony in divorce actions may be decreed a lien on separate property of the husband. (*Huellmantel* v. *Huellmantel,* 124 Cal. 583 [57 Pac. 582] ; *Anderson* v. *Anderson,* 124 Cal. 48 [56 Pac. 630, 57 Pac. 81, 71 Am. St. Rep. 17] ; *Tremper* v. *Tremper,* 39 Cal. App. 62 [177 Pac. 868] ; *Robinson* v. *Robinson,* 79 Cal. 511 [21 Pac. 1095] ; 1 Cal. Jur. 1045.) A wife may not, however, be given a lien on separate property of the husband to secure payment to her of her share of the community property. (*Secondo* v. *Secondo,* 218 Cal. 453 [23 Pac. (2d) 752] ; *Mayberry* v. *Whittier,* 144 Cal. 322 [78 Pac. 16].) There are no statutory provisions concerning the property rights of a putative wife. The judgment in the instant case is not for the division of joint property accumulated during the putative marriage, but for a sum found due plaintiff from defendant. Whether in a particular case a lien should be granted the putative wife is a matter to be determined by the trial court. Since the evidence is not before us, it cannot be held that the court below abused its discretion.

The appeal of plaintiff is dismissed. The portion of the judgment appealed from by defendant is affirmed.

Shenk, J., Curtis, J., Edmonds, J., and Langdon, J., concurred.